610 S.W.2d 876 (1981)
Robert A. DREW and Joyce A. Drew, Appellants,
v.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF FORT SMITH, Arkansas, Appellee.
No. 80-204.
Supreme Court of Arkansas.
January 12, 1981.
Rehearing Denied February 23, 1981.
Robert S. Blatt and Cooper Jacoway, Little Rock, for appellants.
Gean, Gean & Gean, Fort Smith, for appellee.
GEORGE ROSE SMITH, Justice.
The only question presented by this appeal, which was transferred to us by the Court of Appeals, is whether the appellants can maintain their complaint's second asserted cause of action as a class suit. Procedurally, the chancellor's refusal to entertain the suit as a class action is appealable. Ross v. Ark. Communities, 258 Ark. 925, 529 S.W.2d 876 (1975). Substantively, we sustain the chancellor's conclusion.
In 1978 the appellants, a married couple, bought a home already subject to a $32,750 mortgage to the appellee, First Federal. As a condition to its approval of the Drews' assumption of the mortgage, First Federal required them to pay an assumption fee of 1% of the $32,384.30 balance due on the mortgage. The Drews paid the fee of $323.84, but within a few months they brought this suit against First Federal. They first assert that the assumption fee made the loan usurious, a question not yet decided in the trial court. Alternatively, they seek to assert in a class suit that the exaction of the assumption fee was an extortion on First Federal's part, made possible by its contractual privilege of refusing to approve the Drews' assumption of the mortgage and instead declaring the entire debt to be immediately due, which would force the Drews to obtain refinancing at a cost in excess of the 1% assumption fee. Our decision in Tucker v. Pulaski Federal Savings & Loan Assn., 252 Ark. 849, 481 *877 S.W.2d 725 (1972), is relied upon to support the Drews' theory of recovery. The prayer of this part of the complaint is that First Federal be required to account to the plaintiffs, as representatives of the class, for all assumption fees collected from other persons during the preceding five years and thereafter. An attorney's fee is also sought. First Federal stopped collecting the assumption fee after this suit was filed.
First Federal filed a motion for a determination of whether the class suit is maintainable. ARCP 23(b). David Armbruster, a vice president of First Federal, was called by it as the only witness at the hearing upon the motion. On direct examination he testified that each assumed loan is different. The various properties are not only in Sebastian county but in other Arkansas counties and in Oklahoma. The improvements vary. Details of each transaction must be worked out on an individual basis with each assuming purchaser. Those who assume loans have varying degrees of credit worthiness. Counseling with the parties is necessary. Some applicants pay cash; others use secondary financing. In the Drews' own case a substantial file was built up, the application having initially been refused because Drew's income was insufficient. Eventually an arrangement was worked out by which he put up $2,000 as additional collateral. Armbruster estimated that about 1,800 assumption fees had been collected. Exact but incomplete information about the individual loans could be obtained by means of a computer at a cost of $2,500.
On cross examination Armbruster testified that about 10% of the assumptions were on FHA or VA loans, for which a flat fee of $35 was charged. He thought it cost more than that to process such an assumption. The other assumption fees averaged from $200 to $300 each, but his concern was with the total profitability of First Federal. No cost study had been made, though he was concerned about not charging more than what "we feel like is reasonable." The same 1% fee was uniformly charged in each instance (except for FHA and VA loans). His estimates of the proportionate part of employees' time and salaries devoted to processing the assumption applications indicate that, apart from the overhead cost of doing business, the fees resulted in a substantial profit to First Federal. Out-of-pocket expenses, such as fees for credit reports and the recording of instruments, were charged to the applicants. All alternative courses available to the borrowers would have been much more costly than the 1% fee.
The chancellor, in determining that a class action is not appropriate, found that there is not a sufficient commonality of interest among the members of the class, that any causes of action they may have are separate, and that a class action is not superior to other available remedies.
At the outset, it is possible that upon the facts of this case a class action might be maintainable in a federal court under Rule 23 of the Federal Rules of Civil Procedure. Indeed, in Arizona, where the federal rule has been adopted as a state rule, an intermediate court held upon facts practically identical with those before us that a class suit is proper. Home Federal S. & L. Assn. v. Pleasants, 23 Ariz.App. 467, 534 P.2d 275 (1975), overruled upon a different point in Hanania v. City of Tucson, 123 Ariz. 37, 597 P.2d 190 (1979).
In the Pleasants case the court pointed out that the federal courts resolve doubts in favor of class actions. That, however, has not been the traditional view in Arkansas. Our original class action statute, Section 33 of the Civil Code, remained unchanged for more than a century. Ark.Stat.Ann. § 27-809 (Repl.1962). It did not encourage the maintenance of class actions and was not so interpreted. In fact, we construed it quite restrictively in the case principally relied upon by the appellee, Ross v. Ark. Communities, 258 Ark. 925, 529 S.W.2d 876 (1975), where we held that in a class action both the questions of law and the questions of fact must be common to all members of the class. Cf. Comment, Spears, The 1979 Civil Procedure Rules, 2 UALR Law Journal 89, 101 (1979).
It is significant that when we adopted our Rules of Civil Procedure in 1978 we did *878 not copy Federal Rule 23, as we did many of the federal rules. Instead, we repeated our Civil Code section as subsection (a) of our Rule 23. We also omitted the greater part of subsection (b) of Federal Rule 23. On the other hand, we liberalized our restrictive holding in Ross by providing in subsection (b) that a class action may be maintained if the trial court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
In the case at bar it is sufficiently shown that the members of the class are numerous and that the principal question of law  whether First Federal's exaction of the assumption fee could in some instances at least give rise to a cause of action in favor of the borrower  is common to the members of the class. It must still be shown, however, that the class action is superior to individual remedies for the fair and efficient adjudication of the controversy. Not merely efficient but also fair, which necessarily means fair to First Federal as well as to the class as a whole.
It is on this point that we cannot say the chancellor abused her "broad discretion" (Note 2 to our Rule 23) in finding that the class action is not superior to other remedies. In an individual action brought, say, by these appellants, First Federal would unquestionably be entitled to prove that the time and effort devoted to the Drews' application made the 1% fee a reasonable one. If that is so, the Drews are not in an equitable position to profit by showing that First Federal overcharged other borrowers. Thus, even under Federal Rule 23(a)(2) it is questionable whether the Drews' claim is "typical" of the claims of the class. Undoubtedly First Federal itself treated the borrowers as a class in exacting a uniform fee for everyone, but its conduct was not fraudulent or criminal. Consequently we cannot fairly hold that First Federal is somehow unable to present whatever defense or mitigation it may have in individual instances. Thus the class suit may become not one case but a conglomeration of hundreds of individual cases. The chancellor did not abuse her discretion in finding that such a class action would not be superior to individual remedies.
Affirmed.
DUDLEY, J., not participating.